## CLARKE vs. THE COUNTY OF MILWAUKEE.

*September 6 — September 27, 1881.*

53    65
109   624

*(1, 2) Superintendent districts in Milwaukee county. (3) Right of superintendent to statutory salary, notwithstanding action of the board. (4) Inmates of Soldiers' Home, etc., inhabitants of the district.*

1. Chapter 179, Laws of 1861, *proprio vigore*, made two "superintendent districts" in Milwaukee county, corresponding to the senate districts; and the apportionment act of 1866, which added a certain town to one of these senate districts, had the effect to change superintendent district No. 2 so as to include that town.

2. Chapter 342 of 1874 was a revision of the statutes providing for the election of county superintendents and the division of counties into superin-

tendent districts; and it provides (as was before provided) that "in each county having over 15,000 inhabitants, according to the last preceding census," the county board "may, at any meeting of said board in any year, determine, by resolution, that there shall be two superintendents for such county; and said board shall thereupon divide said county," etc. The county board of Milwaukee county did not thereafter, by formal resolution, divide the county into districts; but those previously established were treated as still existing, superintendents being chosen in them, who performed the duties of their offices, received their salaries, and in various ways were treated by the county board as officers both *de facto* and *de jure*. *Held*, that this was equivalent, in legal effect, to a division of the county by resolution of the board under the act of 1874; and, no action having been since taken by the board to discontinue or alter such districts, plaintiff, who was elected superintendent of one of them in 1877, and served through the term, can recover his salary therefor.

3. At the time of plaintiff's election, the statute (chapter 177 of 1869) provided that the compensation of the superintendent in any district of a certain number of inhabitants — if a salary — should not be less than $800. Plaintiff's district contained the number of inhabitants there named; but the board, after his election, fixed his salary, in terms, at only $500. He received his salary at the latter rate and gave a receipt for the amount, without then claiming a larger sum. *Held*, that he is not estopped from recovering the balance of the salary reckoned at $800 per annum.

4. In determining the number of inhabitants of said district, inmates of the National Soldiers' Home, those of the county poor-house, and those of the county insane hospital (all situate in the district), were properly enumerated.

APPEAL from the Circuit Court for *Milwaukee* County. The plaintiff's claim for a balance of $600 alleged to be due him for his services as superintendent of School District No. 2 in Milwaukee county, having been disallowed by the county board, he appealed from that decision to the circuit court, and there had a verdict and judgment for $600. The defendant county appealed from the judgment. The case will appear from the opinion.

*W. C. Williams*, for the appellant:

1. The law in force from 1861 to 1874 (Laws of 1861, ch. 179, sec. 1; Laws of 1863, ch. 155, sec. 86), required the

superintendent districts to correspond with the senate districts in the county. The division made by the county board in accordance with this law in October, 1861, was rescinded and repealed by the apportionment act of 1866 changing the boundaries of the senate districts. Ch. 342, Laws of 1874, amending the prior laws of 1861 and 1863 "so as to read as follows," re-enacted the provisions giving to the county board power to divide the county into superintendent districts, but omitted the provision requiring such districts to correspond to the senate districts. That provision was therefore repealed. *State v. Ingersoll*, 17 Wis., 631; *Goodno v. Oshkosh*, 31 id., 127; *Sydnor v. Palmer*, 32 id., 406. And the county, having never been properly divided under the act of 1874, contained when the plaintiff was superintendent, and now contains, but one superintendent district. 2. If the act of 1866 did not repeal the action of the county board in 1861, the law of 1874 legalizes that action, and the designation of territory then made remains in force and is re-enacted by the law of 1874. In such case, the plaintiff's district was composed of only the two towns of Granville and Milwaukee, which together contain less than 10,000 inhabitants. 3. Even if plaintiff's district comprised the towns of Granville, Milwaukee and Wauwatosa, it contained less than 10,000 inhabitants. The inmates of the National Soldiers' Home in the latter town are not to be deemed residents of this state. They are soldiers of the regular army, subject to the rules and articles of war. R. S. of U. S., sec. 4835; Const. of Wis., art. III, sec. 5. They reside upon United States ground, are subject to no taxes, are exempted from all claims by the state, and all the ordinary duties required of citizens of the state. 4. The plaintiff, having accepted the salary fixed by the board, and having receipted therefor without objection or protest, is estopped to claim anything more. *Thomas v. St. Clair Co.*, 8 N. W. Rep., 45.

For the respondent there were briefs by *Thompson & Clarke*, and oral argument by *Mr. Thompson*. To the point

that the plaintiff was not estopped, by his acceptance of the salary fixed by the board, from demanding the salary provided by statute, they cited *People ex rel. Satterlee v. Board of Police*, 75 N. Y., 38; *Taylor v. Mayor*, 67 id., 91; *People ex rel. Lynch v. Mayor*, 25 Wend., 685; *Cauniff v. Mayor*, 4 E. D. Smith, 437; *Devoy v. Mayor*, 39 Barb., 171; *People v. Devlin*, 33 N. Y., 288; *Conner v. Mayor*, 5 id., 300; *Underwood v. Ins. Co.*, 57 id., 506; *Smith v. Ins. Co.*, 62 id., 87; *Plumb v. Ins. Co.*, 18 id., 392; *Brown v. Bowen*, 30 id., 541; *Rindge v. Baker*, 57 id., 220; 67 id., 21, 91.

COLE, C. J. Chapter 179, Laws of 1861, created the office of county superintendent of schools, and provided for his election. Among other things, the act provided that, in each county having over 15,000 inhabitants according to the last preceding census, the county board of supervisors *might, at any meeting prior to an election of county superintendent in any year*, determine by resolution, to remain in force until rescinded, that two county superintendents should be chosen for such county; and the board was authorized to divide the county into two districts, to be called respectively, "Superintendent District No. 1," and "Superintendent District No. 2." While the resolution remained unrescinded, each district was required to elect a county superintendent for such district. This same act further provided that when a county should contain more than one senate district, each such senate district should constitute a superintendent district, to be numbered as above provided; with an exception which we need not dwell upon. Any county which contained more than one senate district when the law took effect, would, by the force of the act itself, be constituted into as many superintendent districts as there were senate districts, without any action on the part of the county board. But the law not only operated upon the existing state of things, but had regard for the future. It therefore enabled the county board, whenever the county

acquired a population of 15,000 inhabitants according to the last census, to divide the county, by a resolution, into two superintendent districts.

Now, the obvious effect of the law, so far as Milwaukee county was concerned, which had two senate districts in 1861, was *proprio vigore* to make two superintendent districts corresponding with the senate districts, without any action of the county board. It appears, however, that the county board did, by a resolution adopted in October, 1861, attempt to divide Milwaukee county into two superintendent districts corresponding to the existing senate districts. It is manifest that this resolution was superfluous and unnecessary, because, as we have said, the law itself made that division and created the superintendent districts in that county. When the apportionment of 1866 was made (chapter 101, Laws of 1866), the towns of Wauwatosa, Milwaukee and Granville constituted the fifth senate district; and this had the effect to change, by implication, superintendent district No. 2, as created by the act of 1861, so as to embrace that territory which was made the fifth senate district. The law of 1872 (chapter 178, Laws of 1872) gave the county board of a county having 15,000 inhabitants according to the last census, power, *at any meeting in any year*, to divide the county, by a resolution, into two superintendent districts. The policy of the legislature seems to have been still to make each senate district a superintendent district, except where a senate district lay wholly in an incorporated city where a different system prevailed. This was the state of the statutes relating to this matter when chapter 342, Laws of 1874, was enacted. That act was a revision of the statutes upon this particular subject, and made some changes as to the power vested in the county boards. This act still gave the county board of any county having 15,000 inhabitants according to the last census, power, at any meeting of the board, to determine, by resolution, that there should be two superintendents for such county. Thereupon

the board was required to divide the county into two superintendent districts, to be called, etc. This law abandoned the policy of making the limits of the superintendent districts in all cases correspond with the limits of the senate districts. The county board was vested with full authority to make a superintendent district out of territory not constituting a senate district. The act doubtless contemplated that the county boards, in the counties to which its provisions were applicable, would proceed and, by resolution, divide their respective counties into superintendent districts, specifying in the resolution the territory included in each district. But the county board of Milwaukee county took no action in the matter. The superintendent districts, as they had been constituted by previous statutes, were treated as existing and continuing. Superintendents were chosen in those districts, who exercised the duties of their office, received their salaries, and in various ways were treated by the county board as being not only *de facto* but *de jure* officers. This amounted to a practical recognition and adoption, on the part of the county board, of the superintendent districts as they had theretofore been formed, and should be attended with the same legal consequences as though the board had actually made such a division of the county under the law of 1874. If the county board had passed a resolution adopting and confirming these districts as the superintendent districts, there could be no doubt about the entire regularity of the division. But the various acts of the board amount to as deliberate and full a recognition and confirmation of the existing districts as the division by a resolution of that body could have done. We think this action must be treated as a sufficient compliance with the law, until the board does something further in the matter. We should certainly struggle against the conclusion that no superintendent had been or could be legally elected in Milwaukee county until the county board had formally divided the county by resolution, which would be the result were we

to adopt the views and reasoning of the learned attorney for the defendant.

The plaintiff was chosen superintendent of district No. 2 in the fall of 1877, duly qualified, entered upon the office, and discharged its duties for two years. Therefore, under the circumstances, we think he is entitled to receive the salary which the law gave that officer during his term. The county board, at its annual meeting in November, 1877, fixed the salary of the superintendent of district No. 2 at $500 per annum. Chapter 177, Laws of 1869, provided that the compensation of the superintendent in any district containing more than 10,000 inhabitants — if a salary — should not be more than $1,500, nor less than $800. It is plain that the board had no power to fix the salary below the minimum of the statute. By certified copies of the state census introduced in evidence, it appeared that superintendent district No. 2, as constituted in 1866, contained a population of over 10,000 inhabitants. But in this enumeration were included the inmates of the National Soldiers' Home, of the county poor-house and farm, and of the county and insane hospital in the town of Wauwatosa. With these inmates excluded from the enumeration, the population of the district would fall below 10,000. It is insisted on behalf of the county that they should not be counted in determining the population. Without discussing the point, it seems to us very clear that these persons were properly deemed inhabitants of the district.

It is further insisted that the plaintiff is estopped from recovering any further salary from the county because he accepted, without objection or protest, and receipted for, the salary as fixed by the county board. In this case the plaintiff was elected to the office before the board attempted to fix his compensation, and presumptively he intended to claim the salary which the law gave him. At all events, we do not see anything in the case which should be construed as estopping him from making that claim. He was only paid a part of his sal-

ary, and he gave a receipt for the same. We are not inclined to hold that these acts amount to a full assent on his part to receive $500 salary for his services. There was no error in the court directing the jury to find a verdict for the plaintiff for $600.·

*By the Court.*— The judgment of the circuit court is affirmed.